# United States Court of Appeals
## For the First Circuit

No. 10-1124

IN RE: CITIGROUP, INC. CAPITAL ACCUMULATION PLAN LITIGATION

JEROME RENAUDIN; STEVEN RODEMER,

Plaintiffs, Appellants,

v.

CITIGROUP GLOBAL MARKETS INC.; SMITH BARNEY INC.; CITIFINANCIAL INC.; CITIGROUP INC.; TRAVELERS GROUP INC.; SALOMON SMITH BARNEY HOLDINGS INC.; SALOMON SMITH BARNEY INC.; PRIMERICA FINANCIAL SERVICES, INC.,

Defendants, Appellees,

ABC CORPS 1-100; JOHN DOES 1-100,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Torruella, Boudin, and Lipez, Circuit Judges.

Bruce Nagel and Nagel Rice, LLP on brief, for appellants.
Thomas J. Dougherty, William P. Frank, David S. Clancy, Kara E. Fay, Nicholas L. Leitzes, and Skadden, Arps, Slate, Meagher & Flom LLP on brief, for appellees.

July 13, 2011

**LIPEZ, Circuit Judge**. This appeal involves two groups of former employees of Salomon Smith Barney and its predecessors and affiliates who, like many similarly situated plaintiffs before them, participated in a deferred compensation plan known as the Capital Accumulation Plan (CAP). For the most part, the plaintiffs' claims rehash unsuccessful claims brought by the plaintiffs in In re Citigroup, Inc. Capital Accumulation Plan Litigation, 535 F.3d 45 (2008). The notable difference between the two cases -- namely, the applicable state law in the 2008 case was that of Florida and Georgia, while in this case it is the law of Colorado and Louisiana -- does not change our view of the merits of those claims. In a well-reasoned and thorough order, the district court granted summary judgment for the defendants on all of the claims against them. See In re Citigroup, Inc. Capital Accumulation Plan Litig., No. 00-cv-11912-NG (D. Mass. Jan. 6, 2010). Relying on our previous In re Citigroup decision and the district court's able and convincing opinion, we summarily affirm.

**I.**

Under the terms of the CAP, the employees elected to receive portions of their earned commissions in the form of Citigroup stock, received at a 25% discount and on a tax-deferred basis. The stock was subject to a two-year vesting period[1] during

_____

[1] The plaintiffs participated only in the voluntary payroll program, which had a two-year vesting period. The district court held, and the plaintiffs do not contest, that the plaintiffs lack

-2-

which the employees were restricted from transferring their shares but were entitled to direct the shares' vote and receive regular dividends or dividend equivalents. If the employee resigned before the vesting period elapsed, she forfeited the restricted shares as well as any compensation that was set aside to purchase those shares. Further details regarding the CAP and the terms of the plaintiffs' participation in it are set forth in the district court's opinion.

Rodemer, who represents a class of Colorado plaintiffs, alleged that the CAP's forfeiture provision violates the Colorado Wage Claim Act (CWCA), Colo. Rev. Stat. § 8-4-103. Renaudin, who represents a class of Louisiana plaintiffs, alleged that the forfeiture provision violates Louisiana's labor statute, La. Rev. Stat. Ann. §§ 23:631(A)(1)(a), 23:634(A). Both plaintiffs also brought claims for breach of their employment contracts, breach of the CAP contract, conversion, and unjust enrichment. In addition, Renaudin asserted claims based on the non-payment of interest on the money withheld before stocks were purchased.[2] Both plaintiffs also requested that the district court certify questions of state law to the Colorado and Louisiana Supreme Courts. The parties

standing to challenge the non-voluntary bonus program, which had a vesting period of three years.

[2] The defendants also asserted counterclaims, which the district court deemed moot in light of the summary judgment order. Those counterclaims are not a subject of this appeal.

-3-

filed cross-motions for summary judgment, and the district court entered judgment against the plaintiffs on their claims.

## II.

### A. Statutory Claims

1. Colorado Wage Claim Act

We agree with the district court that the CAP does not violate the CWCA because the statute does not require payment of wages or compensation "until such amount is earned, vested, and determinable," Colo. Rev. Stat. § 8-4-101(8)(a)(I). Under the terms of the CAP documents, the Colorado plaintiffs had not "earned" either the full rights to the stock or the amount of the commissions used to purchase the stock, as Rodemer contends, because they had agreed to accept compensation in the form of CAP stock, and their rights to that stock did not fully vest for two years. The cases Rodemer cites were all analyzed correctly by the district court and do not support his position given the facts of this case.

The district court correctly noted that the quoted provision was not enacted until 2003, after Rodemer sued and well after his resignation. However, Colorado courts had come to the same conclusion at least by 1990. See Barnes v. Van Schaack Mortg., 787 P.2d 207, 209 (Colo. App. 1990) ("The Wage Claim Act . . . applies only to compensation that has been earned under the employment agreement," which includes compensation that "is vested

-4-

pursuant to an employment agreement at the time of an employee's termination."); <u>Rohr</u> v. <u>Ted Neiters Motor Co.</u>, 758 P.2d 186, 188 (Colo. App. 1988) (explaining that "wages or compensation" under the CWCA must be "'both vested and determinable as of the date of termination'" (quoting <u>Hartman</u> v. <u>Freedman</u>, 591 P.2d 1318, 1321 (Colo. 1979))).

2. Louisiana Labor Statute

Similarly, the CAP does not violate the Louisiana labor statute, which requires that employers pay discharged employees "the amount then due under the terms of employment." La. Rev. Stat. Ann. § 23:631(A)(1)(a). As explained by the district court, according to the terms of the CAP documents, the stock was not "then due" at the time the Louisiana plaintiffs resigned. The appellees also did not "require" the plaintiffs to sign contracts calling for forfeiture of wages upon resignation, which is forbidden by Louisiana statute. <u>See</u> <u>id.</u> § 23:634(A). Rather, the CAP was made available to the plaintiffs as a benefit of employment, and they were free to reject that benefit.

**B. Common Law Claims**

The appellants' common law claims were also properly rejected by the district court.

1. Breach of Employment and CAP Contracts

As the district court found, with respect to the breach of employment contract claims, the appellants' agreement to

participate in the CAP program modified any prior employment contract. We reached that conclusion in In re Citigroup, based on equivalent documents, and our conclusion is as true under Colorado and Louisiana law as it is under Florida and Georgia law. See In re Citigroup, 535 F.3d at 57 ("[T]he . . . election by appellants to participate in the CAP served as a formal modification of th[e] terms [of the commission grids]."); Bonvillain Builders, LLC v. Gentile, 29 So.3d 625, 631 (La. Ct. App. 2009) ("A contract may be modified only by mutual consent."); Colowyo Coal Co. v. City of Colorado Springs, 879 P.2d 438, 443 (Colo. App. 1994) ("The consensus of both parties is required in order to modify or to supplant a valid contract."). By signing the Restricted Stock Award Agreement and the election form, the appellants "indicate[d] [their] assent to the unambiguous terms of the CAP contract." In re Citigroup, 535 F.3d at 57.

The argument that the modification was invalid for lack of consideration also fails. As we explained in In re Citigroup, the brokers received "substantial consideration" for the modification, including a reduced price for Citigroup stock, federal tax deferral, and the opportunity to vote their shares and receive dividends before the restriction period lapsed. See id. at 57-58.

The CAP contract does not violate the public policy of either Colorado or Louisiana as expressed in their wage statutes.

-6-

See In re Citigroup, Inc., No. 00-cv-11912-NG, at 36-39. Moreover, the states' aversion to forfeiture is not an absolute bar to such contractual terms. Colorado upholds such provisions so long as they are not ambiguous, see Cooley v. Big Horn Harvestore Sys., Inc., 813 P.2d 736, 749 (Colo. 1991), and Louisiana upholds them absent some additional element of unfairness, see Morse v. J. Ray McDermott & Co., 344 So. 2d 1353, 1359 (La. 1977). The CAP contract is neither ambiguous nor unfair. See In re Citigroup, 535 F.3d at 55-56.[3]

2. Conversion

Because the appellees did not violate any contract, the conversion claims also fail. As the district court explained, the actions that the appellees took allegedly depriving the appellants of ownership or control of their property were done in accordance with the CAP contract, and thus were not wrongful. See, e.g., New Orleans Jazz & Heritage Found., Inc. v. Kirksey, 40 So.3d 394, 405 (La. Ct. App. 2010) (explaining that conversion requires a "wrongful exercise or assumption of authority over another's goods" (emphasis added)); Carder, Inc. v. Cash, 97 P.3d 174, 183 (Colo. App. 2003) ("Conversion is any distinct, unauthorized act of

---

[3] Although it appears that the Restricted Stock Award Agreement (RSAA) signed by Rodemer and Renaudin was shorter than the one quoted in In re Citigroup, the language considered in that case appears in the prospectus, to which the RSAA explicitly refers.

dominion or ownership exercised by one person over personal property belonging to another." (emphasis added)).

### 3. Unjust Enrichment

The appellants' unjust enrichment claims fail because neither Colorado nor Louisiana recognize a claim for unjust enrichment where a valid contract exists that covers the same subject matter. See, e.g., Jorgensen v. Colo. Rural Props., LLC, 226 P.3d 1255, 1259 (Colo. App. 2010) ("[A] claim for unjust enrichment may not be asserted if there is a valid contract covering the subject matter of the alleged obligation to pay."); Andrews v. Barham, 975 So. 2d 825, 828 (La. App. Ct. 2008) ("[B]ecause a contract existed . . . unjust enrichment is [not] available as a theory of recovery."). The same principle exists under Florida and Georgia law, and was applied in In re Citigroup, 535 F.3d at 59, 62.

### 4. Failure to Pay Interest

The district court did not err, as the appellants maintain, by dismissing Renaudin's claims based on failure to pay interest on the money set aside to purchase Citigroup stock.[4] The CAP documents do not provide for payment of interest, and thus failure to pay interest was not a breach of contract. See In re

---

[4] Although the appellants' brief states that the court erred with respect to these claims in both the Colorado and Louisiana actions, Rodemer's complaint did not allege any claims based on failure to pay interest. The motion for summary judgment also does not refer to such claims.

Citigroup, Inc., No. 00-cv-11912-NG, at 42-43; see also In re Citigroup, 535 F.3d at 61 n.15 (rejecting appellant's claim for failure to pay interest on diverted income because he "has not cited any language or provision in any of the CAP documents indicating that a participant is entitled to such interest" and any claim based on another source of law fails because "he has not set forth any statute or other legal support for this entitlement").

Renaudin makes no more than a passing attempt to challenge the dismissal of his claims that the failure to pay interest constituted conversion or unjust enrichment. Because the argument is entirely undeveloped, it is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

## C. Certification

We decline to exercise our discretion to certify any questions of state law to the supreme courts of Colorado and Louisiana.[5] The state law at issue, as described above, is "'sufficiently clear to allow us to predict its course,'" and thus certification is inappropriate. The Real Estate Bar Ass'n for

---

[5] The Colorado Supreme Court "may answer questions of law certified to it" by this court if the questions of law "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court." Colo. R. App. P. 21.1(a). Similarly, the Louisiana Supreme Court may accept certified questions of law "which are determinative of [a pending] cause" if "there are no clear controlling precedents in the decisions of the supreme court of [Louisiana]." R. Sup. Ct. La. XII(1).

Mass., Inc. v. Nat'l Real Estate Info. Servs., 608 F.3d 110, 118 (1st Cir. 2010) (quoting Ropes & Gray LLP v. Jalbert (In re Engage, Inc.), 544 F.3d 50, 53 (1st Cir. 2008)).  As we have explained in the past, "[c]ertification of questions of local law from one court to another is, by its very nature, a cumbersome and time-consuming process" that "stops a case in its tracks, multiplies the work of the attorneys, and sharply increases the costs of litigation." González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 323 (1st Cir. 2009).  As in our previous In re Citigroup opinion, the state supreme courts "have not addressed the precise questions before us today, [but] the state law on these issues is clear and well-established."  535 F.3d at 62.  Given the clarity of the state law, we decline to impose the burden of certification on the litigants, the state courts, and the legal system.

## III.

For the foregoing reasons, we summarily affirm the decision of the district court.  See 1st Cir. Loc. R. 27.0(c).

So ordered.