15-1731-cr
United States of America v. Fawwaz

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 2nd day of June, two thousand seventeen.

Present:      ROSEMARY S. POOLER,
              RICHARD C. WESLEY,
              SUSAN L. CARNEY,
                        *Circuit Judges.*

---

UNITED STATES OF AMERICA,

                    *Appellee*,

          v.                                          15-1731-cr

KHALED AL FAWWAZ, AKA Abu Omar, AKA Khaled Abdul
Khaled Abdul Rahman Hamad al Fawwaz, AKA Hamad,

                    *Defendant-Appellant*.[1]

---

Appearing for Appellant:      Bobbi C. Sternheim, New York, NY.

                              David V. Kirby, O'Connor & Kirby, P.C. (Barbara E. O'Connor,
                              *on the brief*), Burlington, VT.

Appearing for Appellee:       Stephen J. Ritchin, Sean Buckley, Assistant United States
                              Attorneys, (Nicholas J. Lewin, Karl Metzner, Assistant United

---

[1] The Clerk of Court is respectfully directed to amend the caption as above.

States Attorneys, *on the brief*), *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Kaplan, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Defendant-Appellant Khaled al Fawwaz appeals the May 19, 2015 judgment of conviction entered against him in the United States District Court for the Southern District of New York (Kaplan, *J.*), following a five-week trial in which the jury found Fawwaz guilty of: (1) conspiracy to murder United States nationals in violation of 18 U.S.C. § 2332(b), (2) conspiracy to murder officers or employees of the United States in violation of 18 U.S.C. § 1114, (3) conspiracy to damage or destroy United States property in violation of 18 U.S.C. § 844(n), and (4) destruction of national defense material in violation of 18 U.S.C. § 2155(a). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Fawwaz first challenges the sufficiency of the evidence supporting his convictions. "We review the sufficiency of the evidence *de novo*." *United States v. Anderson*, 747 F.3d 51, 59 (2d Cir. 2014). "A defendant challenging a conspiracy conviction on sufficiency grounds bears a heavy burden," *United States v. Salameh*, 152 F.3d 88, 151 (2d Cir. 1998) (internal quotation marks omitted), "as we exercise an exceedingly deferential standard of review," *Anderson*, 747 F.3d at 59 (internal quotation marks omitted). "We review the evidence in the light most favorable to the government and credit every inference that the jury might have drawn in the government's favor." *Salameh*, 152 F.3d at 151. "We must uphold a conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Anderson*, 747 F.3d at 59 (internal quotation marks omitted).

Fawwaz relies on *United States v. Papadakis*, 510 F.2d 287 (2d Cir. 1975), in arguing that the evidence is insufficient to sustain his convictions. In *Papadakis*, this Court explained that "[w]here a conspiracy has multiple objectives, a conviction will be upheld so long as evidence is sufficient to show an appellant agreed to accomplish at least one of the criminal objectives," with the "caveat" that "an overwhelming amount of evidence relevant only to the unproved part of the conspiracy may have [so] prejudiced the jury" that a conviction cannot stand against a sufficiency challenge. *Id.* at 297. The caveat did not apply in *Papadakis* because the Court found the evidence admitted was relevant to proving the crime charged. *Id.* The only two other Second Circuit cases to cite the caveat both have found that it did not apply to the facts therein. *See United States v. Desnoyers*, 637 F.3d 105, 110 (2d Cir. 2011) (holding the Court "need not determine the continuing validity of the *Papadakis* caveat" because it did not apply there where "an overwhelming amount of the evidence at trial was not relevant solely to the [unproven] object"); *United States v. Dixon*, 536 F.2d 1388, 1401-02 (2d Cir. 1976) (observing *Papadakis* included a "caveat not here applicable").

We, like the Court in *Desnoyers*, find that we need not determine the continuing validity of the *Papadakis* caveat. There was ample evidence at the trial that proved Fawwaz knew of and participated in furthering the Al Qaeda objective of killing American service members in Somalia. There was also an overwhelming amount of evidence at the trial that was relevant to the Al Qaeda objective of murdering United States nationals anywhere in the world such that the evidence was not solely related to the Al Qaeda objective of committing the embassy bombings. The *Papadakis* caveat accordingly does not apply here.

Fawwaz next challenges the admission of the "Al Qaeda membership list" (the "List") at trial. "[W]e review a district court's determination as to the admissibility of evidence at trial for abuse of discretion," *United States v. Coplan*, 703 F.3d 46, 82 (2d Cir. 2012), and "a district court's finding that hearsay is admissible under the co-conspirator exception for clear error," *United States v. Al-Moayad*, 545 F.3d 139, 173 (2d Cir. 2008).

Federal Rule of Evidence 901(b)(4) permits authentication based on "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). This standard is met if "the writing deals with a matter sufficiently obscure or particularly within the knowledge of the persons corresponding." *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990) (internal quotation marks and brackets omitted).

We hold that the district court did not abuse its discretion in determining that the List had been sufficiently authenticated due to its distinctive characteristics, taken together with all of the other circumstances. Here, as in *Al-Moayad*, FBI Special Agent Jennifer Hale Keenan testified as to "how the documents she received from Afghanistan, including the [List], were collected received, sorted, analyzed, and sent to the United States." *See* 545 F.3d at 173. In addition, Sergeant Major David Karnes explained how the contents of the trunk, including the List, were recovered from an area of Afghanistan in which Al Qaeda maintained its operations hub, including the residences of Osama bin Laden and another high-ranking Al Qaeda officer. FBI Special Agent Mary Deborah Doran also confirmed reviewing the List in a secure facility in the United States. This Court held that Special Agent Keenan's testimony was sufficient to authenticate the document offered in *Al-Moayad*, and we find no reason to depart from that holding here where even more evidence was offered to prove that the List was an authentic Al Qaeda-drafted document.

Testimony from former Al Qaeda members offered further support for an inference that the List was accurate and therefore more likely to have been authored by an Al Qaeda member. L'Houssaine Kherchtou, a former Al Qaeda member turned government witness, identified the List as being a list of Al Qaeda members just by looking at it. Kherchtou identified himself on the List, at number 104, based on one of his aliases. Kherchtou further identified Fawwaz on the List—as Hamad al Kuwaiti at position number 9—based on one of Fawwaz's aliases. Throughout his extensive testimony, Kherchtou identified over twenty names on the List as sworn members of Al Qaeda, many based almost entirely on his personal knowledge of their private aliases. Ihab Ali, another former Al Qaeda member turned government witness, similarly stated that he recognized names on the List as names of Al Qaeda members. Ali identified himself by his alias, as number 66 on the List. Ali also identified more than ten other names on

3

the List as Al Qaeda members based on his personal knowledge of the individuals and their aliases, including names different from those identified by Kherchtou.

The question thus becomes whether the List was properly admitted under the co-conspirator exception to the rule against hearsay. "To admit hearsay testimony under [Federal] Rule [of Evidence] 801(d)(2)(E), the district court must find (a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of a conspiracy." *Al-Moayad*, 545 F.3d at 173 (internal quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Gupta*, 747 F.3d 111, 124 (2d Cir. 2014).

As explained above, the evidence at trial indicated the List was composed by an Al Qaeda co-conspirator. *See Gupta*, 747 F.3d at 123 ("In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself."); *Al-Moayad*, 545 F.3d at 173. With respect to whether the List was in furtherance of the conspiracy, this Court has previously held that the type of information contained in the List, namely information regarding the current status of the conspiracy and its membership, is sufficiently "in furtherance of [a] conspiracy" for the co-conspirator exception to the hearsay rule to apply. *See In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 139 (2d Cir. 2008); *United States v. Russo*, 302 F.3d 37, 46 (2d Cir. 2002) ("The operation of [a criminal conspiracy] requires that information be passed among interested persons, advising them of the membership and the hierarchy."). Furthermore, admission of the List did not violate Fawwaz's Confrontation Clause rights because the Supreme Court has recognized that a piece of hearsay admitted under the co-conspirator exception as a "statement[] in furtherance of a conspiracy" is "by [its] nature . . . not testimonial." *Crawford v. Washington*, 541 U.S. 36, 556 (2004). Accordingly, there was no clear error in the district court's finding that the List was a statement of a co-conspirator, making it admissible under Federal Rule of Evidence 801(d)(2)(E).

Fawwaz further argues that the district court erred in limiting the Rule 15 deposition of one of his proposed witnesses, Dr. Mohammad al Massari, an acquaintance of Fawwaz in London between the summer of 1994 and April 1996 and who was not affiliated with Al Qaeda. "The decision to permit a deposition under Rule 15 rests within the sound discretion of the trial court, and will not be disturbed absent clear abuse of discretion." *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999) (internal quotation marks omitted). Under Federal Rule of Criminal Procedure 15(a), "[a] movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice" before the court may, in its discretion, order the deposition. *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001).

The district court did not abuse its discretion in limiting Massari's Rule 15 deposition. Fawwaz argues that Massari's testimony was material to the question of whether the Advice and Reformation Committee ("ARC") was a legitimate organization with a legitimate purpose. That issue, however, is only marginally relevant to the determination of Fawwaz's guilt. *See Cohen*, 260 F.3d at 78. ARC might very well have been a legitimate organization with a legitimate

4

purpose, but that does not preclude Fawwaz's having also been an active member of Al Qaeda. The vast majority of the evidence at trial with respect to Fawwaz's time in London was unrelated to his work with ARC. Furthermore, evidence regarding the legitimate activities of ARC was introduced at trial, including the ARC constitution and a document on ARC letterhead describing its curriculum and goals. Massari's proposed testimony is thus both of limited materiality and unnecessary to prevent a miscarriage of justice.

Lastly, Fawwaz argues that the district court erred in excluding the proposed expert testimony of Professor Emile George Joffé with respect to Al Qaeda's shift in focus from the war against the Soviets in Afghanistan in the 1980s and early 1990s to a global war against the United States in the mid-1990s on relevancy and Rule 403 grounds.

"A district court's exclusion of expert testimony is reviewed for abuse of discretion, and a decision to admit or exclude expert . . . testimony is not an abuse of discretion unless it is manifestly erroneous." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 160-61 (2d Cir. 2012) (internal quotation marks and brackets omitted). "[Federal] Rule [of Evidence] 403 determinations command especial deference because the district court is in the best position to do the balancing mandated by Rule 403." *United States v. Al Kassar*, 660 F.3d 108, 123 (2d Cir. 2011) (internal quotation marks omitted). "So long as the trial court conscientiously balanced the proffered evidence's probative value with the risk for prejudice, we will reverse its conclusion only if it is arbitrary or irrational." *Id.* (internal quotation marks omitted). "Further, an erroneous evidentiary ruling warrants a new trial only when a substantial right of a party is affected, as when a jury's judgment would be swayed in a material fashion by the error." *Chin*, 685 F.3d at 161 (internal quotation marks omitted).

It is not entirely clear that the district court's ruling—which permitted Joffé to testify regarding bin Laden's opposition to the Soviets in Afghanistan, the Saudi government, and the United States, before the issuance of bin Laden's 1996 declaration of jihad against the United States and Americans in the Arabian Peninsula—actually prevented Joffé from illustrating the shift in Al Qaeda's focus over time. Assuming, however, for the purposes of Fawwaz's argument that the district court did essentially preclude Joffé's testimony regarding the transition of Al Qaeda from an anti-Soviet organization to an anti-American one, the district court did not abuse its discretion in the testimonial scope it allowed Joffé. The vast majority of the evidence at trial was directed towards Fawwaz's actions and relationships with Al Qaeda between 1996 and 1998. Joffé's testimony regarding Al Qaeda's focus in earlier periods would not have been responsive to that evidence.

Further, to the extent it might have been relevant, defense counsel was able to elicit testimony on Al Qaeda's primary targets during the late 1980s and early 1990s from one of the government witnesses, Daniel Coleman, a retired FBI agent. On cross-examination, Coleman explained that the United States government had backed the anti-Soviet forces in Afghanistan, including the mujahideen, during the conflict that ended in 1989. Fawwaz has not identified what further information Joffé would have provided, other than an expert imprimatur on information that was barely relevant. Given the concerns about the powerful and misleading nature of expert testimony, the district court did not abuse its discretion in precluding any arguably relevant testimony from Joffé under Rule 403. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579,

5

595 (1993) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under [Federal] Rule [of Evidence] 403 . . . exercises more control over experts than over lay witnesses.").

We have considered the remainder of Fawwaz's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk