14-3674-cr
United States of America v. Sulaiman Abu Ghayth

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of September, two thousand seventeen.

PRESENT: DENNIS JACOBS,
JOSÉ A. CABRANES,
RICHARD C. WESLEY,
                Circuit Judges.

- - - - - - - - - - - - - - - - - - - - -X
United States of America,
        Appellee,

        -v.-                                      14-3674

Sulaiman Abu Ghayth,
        Defendant-Appellant.
- - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| FOR APPELLANT: | Zoe J. Dolan, Law Offices of Zoe Dolan, Los Angeles, California |
| FOR APPELLEE: | Michael Ferrara (John P. Cronan, Nicholas Lewin on the brief) Assistant United States Attorneys for the Southern District of New York, New York. |

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Kaplan, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Sulaiman Abu Ghayth appeals from the judgment of the United States District Court for the Southern District of New York convicting him, after a jury trial, of various terrorism-related offenses and sentencing him to life in prison. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Abu Ghayth is an Islamic cleric of Kuwaiti descent who delivered speeches at Al Qaeda training camps and guesthouses in the months leading up to September 11, 2001, in which he urged Al Qaeda recruits to pledge their loyalty to bin Laden and fight for jihad. He also participated in numerous Al Qaeda recruiting and propaganda videos that aired in the months following the September 11 terrorist attacks. He was detained abroad and charged with conspiracy to murder Americans, 18 U.S.C. § 2332(b) (Count I), conspiracy to provide material support to terrorism, 18 U.S.C. § 2339A (Count II), and material support of terrorism (Count III). After a jury trial, he was convicted on all counts.

The gravamen of Abu Ghayth's appeal is that he could not commit any of the charged crimes because he lacked specific knowledge of any particular plot and did not participate in a specific terrorist act. To this end, he raises four distinct issues on appeal: (1) whether the jury instructions for Count I properly identified the mens rea for conspiracy to murder; (2) whether the evidence was sufficient to sustain a conviction for conspiracy to murder; (3) whether the jury instructions for Count III properly identified the intent requirement for aiding and abetting material support under United States v. Rosemond; and (4) whether the indictment for Counts II and III sufficiently alleged providing material support of terrorism.

## I. Jury Instructions for Conspiracy to Murder Americans (Count I)

We review "challenges to jury instructions de novo but will reverse only where the charge, viewed as a whole, demonstrates prejudicial error." United States v. Prado, 815 F.3d 93, 100 (2d Cir. 2016) (internal citations omitted). We consider "the instructions as a whole to see if the entire charge delivered a correct interpretation of the law." United States v. Al Kassar, 660 F.3d 108, 127 (2d Cir. 2011) (internal quotations omitted); United States v. Alkins, 925 F.2d 541, 550 (2d Cir. 1991) (the trial court "has discretion to determine what language to use in instructing the jury as long as it adequately states the law.").

Section 2332(b) provides, in relevant part:
> Whoever outside the United States ... engages in a conspiracy to kill[] a national of the United States shall ... in the case of a conspiracy by two or more persons to commit a killing that is a murder as defined in section 1111(a) of this title, if one or more such persons do any overt act to effect the object of the conspiracy, be [fined and/or imprisoned].

18 U.S.C. § 2332(b). Murder is defined as the "unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a).

"To establish the existence of a criminal conspiracy, the government must prove that the conspirators agreed 'on the essence of the underlying illegal objectives[,] and the kind of criminal conduct in fact contemplated.'" In re Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d 93, 113 (2d Cir. 2008) (quoting United States v. Salameh, 152 F.3d 88, 151 (2d Cir. 1998)). The government need not prove that the defendant knew every unlawful objective of the conspiracy, every detail of its operation, or the identity of every co-conspirator. United States v. Gleason, 616 F.2d 2, 16-17 (2d Cir. 1979); see also Ocasio v. United States, 136 S. Ct. 1423, 1429 (2016) ("The government does not have to prove that the defendant intended to commit the underlying offense himself/herself."). It must show only "that the defendant shared some knowledge of the conspiracy's unlawful aims and objectives," Salameh, 152 F.3d at 151, and "specifically intended that some conspirator commit each element of the substantive offense," Ocasio, 136 S. Ct. at 1432.

3

The court's instructions properly conveyed those requirements. It explained to the jury: "What is necessary is that the defendant have participated in the conspiracy with knowledge of its unlawful purpose, and with an intent to aid in the accomplishment of its unlawful objective," i.e., the murder of Americans. It added that the "defendant, with an understanding of the unlawful nature of the conspiracy, must intentionally have engaged, advised, or assisted in the conspiracy for the purpose of furthering any of its illegal objectives." It then defined the illegal objective of the conspiracy, murder, in accordance with 18 U.S.C. § 1111(a).

Abu Ghayth contends these instructions vitiated the "specific intent" requirement for conspiracy and murder, but viewing the charge as a whole, they explicitly and repeatedly stressed the government's burden to prove intent; for example, the court emphasized that the defendant "must intentionally have engaged, advised, or assisted in the conspiracy for the purpose of furthering any of its illegal objectives." The phrase "any of its illegal objectives" does not subvert the mens rea requirement for murder, since Judge Kaplan began the charge by identifying the universe of "illegal objectives" of the conspiracy as "the unlawful agreement to kill American nationals." The instructions did not require the jury to find that Abu Ghayth intended to kill a specific person or plan a specific plot, because the killing of Americans was the "essential nature" of the illegal objective, and Abu Ghayth was charged only with conspiracy to commit that act. In re Terrorist Bombings, 552 F.3d at 113.

## II. Sufficiency of the Evidence on Conspiracy to Murder Americans (Count I)

"A defendant challenging his verdict on sufficiency grounds bears a heavy burden." United States v. McCarthy, 271 F.3d 387, 394 (2d Cir. 2001) (citation omitted). We affirm a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). On appeal we consider the evidence in the light most favorable to the government and analyze each piece of evidence in terms of the totality of the government's case. United States v. Persico, 645 F.3d 85, 104 (2d Cir. 2011).

4

Abu Ghayth challenges the sufficiency of evidence to support Count I, conspiracy to murder Americans. He essentially characterizes himself as a religious figure who was present among known terrorists without killing anyone or participating in the execution or planning of any specific act of terror.

The flaw in Abu Ghayth's sufficiency arguments flows from the failure of his challenge to the jury instructions. The government had no need to show that he possessed knowledge of any particular plot to kill Americans or that he had the specific intent to carry out such a plot. Its burden was to prove that he had "knowing participation or membership in the scheme" and "some knowledge of [its] unlawful aims and objectives." United States v. Lanza, 790 F.2d 1015, 1022 (2d Cir. 1986); Ocasio, 136 S. Ct. at 1429-30. In other words, the jury only had to find that Abu Ghayth knew of Al Qaeda's objective to kill Americans and intended to participate. See United States v. Fawwaz, 2017 WL 2399329, *1 (2d Cir. Jun. 2, 2017) (summary order affirming conviction for conspiracy to kill Americans) (citing Salameh, 152 F.3d at 151).

Taking the evidence in the light most favorable to the government, the proof of this knowledge is overwhelming. Abu Ghayth joined the criminal conspiracy by seeking out Osama bin Laden in Afghanistan and pledging his services to Al Qaeda as a religious scholar and orator. He participated in the conspiracy by delivering speeches with bin Laden, including on the day after the September 11 attacks and in advance of the shoe-bomb plot. These speeches threatened and urged the killing of Americans, for example, by evoking the "Storm of Airplanes" and "our war with the United States," and promised further deadly attacks. The fact that Abu Ghayth may not have known the logistics is of no moment. Gleason, 616 F.2d at 16. Nor is it relevant that he only partially pledged fealty to bin Laden, or that he was not known by every co-conspirator. See id.; see also United States v. Sterling, 506 F.2d 1323, 1340 (2d Cir. 1974). The defendant joined the conspiracy and is equally complicit "by reason of [his] knowledge of the plan's general scope, if not its exact limits." Blumenthal v. United States, 332 U.S. 539, 559 (1947).

### III. Jury Instructions on Aiding and Abetting Material Support of Terrorism (Count III)

Abu Ghayth's challenge to the jury instructions on Count III is raised for the first time on appeal; we therefore review these instructions for plain error. <u>United States v. Vilar</u>, 729 F.3d 62, 70 (2d Cir. 2013).

Count III alleged a violation of 18 U.S.C. § 2339A with a charging reference to 18 U.S.C. § 2-the aiding and abetting liability statute. Section 2339A(a) defines an offense that proscribes "provid[ing] material support or resources ... knowing or intending that they are to be used in preparation for, or in carrying out, a violation of ... [18 U.S.C. §] 2332b." The jury instructions articulated that Abu Ghayth was guilty as an aider and abettor under this statute if the jury found (1) that another individual "knowingly committed the underlying crime of providing material support to terrorists," (2) that Abu Ghayth "willingly and knowingly associated himself in some way with that crime," and (3) that he "willfully engaged in some affirmative conduct or some overt act for the specific purpose of bringing about that crime." The instructions further stressed that the defendant must have "the specific intent to do something the law forbids," and that one who lacks knowledge of the crime cannot be an aider and abettor.

Abu Ghayth argues that these instructions failed to take account of the mens rea requirement for aiding and abetting liability set forth in <u>Rosemond v. United States</u>, 134 S. Ct. 1240 (2014). <u>Rosemond</u> held that for a conviction under the firearm-use-in-drug-trafficking statute, 18 U.S.C. § 924(c), "the intent must go to the specific and entire crime charged." <u>Id</u>. at 1248. The defendant therefore had to have prior knowledge both that the criminal drug-trafficking would take place and "that a confederate would use or carry a gun during the crime's commission." <u>Id</u>. at 1243.

Even if one reads <u>Rosemond</u> into 18 U.S.C. § 2339A, Abu Ghayth was not prejudiced and therefore the district court committed no plain error. <u>Prado</u>, 815 F.3d at 99. The underlying crime defined by Section 2339A involves (1) knowingly (2) providing material support or resources (3) knowing or intending that such resources are to be used in preparation for or in carrying out (4) an offense identified as a federal crime of terrorism. <u>See</u> 18 U.S.C. § 2339A. <u>Rosemond</u> would only control if Abu Ghayth lacked full knowledge that his material support would contribute to an act of terrorism. 134 S. Ct. at 1247-48. But the jury

6

could not have followed the district court's instructions in arriving at its verdict on Count I without finding that he "join[ed] in the criminal venture ... with full awareness of its scope." Id. at 1249. As discussed, the overwhelming evidence supports Abu Ghayth's conviction for conspiring to murder Americans under 18 U.S.C. § 2332(b), a federal crime of terrorism identified in Section 2339A.

## IV. Indictment Alleging Material Support of Terrorism (Counts II & III)

Counts II and III of the indictment charged Abu Ghayth with conspiracy to provide material support to terrorism by furnishing personnel, and the underlying substantive offense. 18 U.S.C. § 2339A ("the term 'material support or resources' means any ... personnel (1 or more individuals who may be or include yourself)"). Abu Ghayth sought to dismiss Counts II and III on the ground that the indictments fail to allege "material support or resources" under 18 U.S.C. § 2339A.

A criminal defendant is entitled to "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). This Court "ha[s] consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Pirro, 212 F.3d 86, 92 (2d Cir. 2000) (internal quotations omitted). Here, the indictment tracked the language of Section 2339A in alleging that Abu Ghayth provided and conspired to provide "material support and resources-to wit, personnel-knowing and intending that they were to be used in preparation for, and in carrying out of, a violation of" Section 2332(b). See id. It further explained Al Qaeda's core operations, the nature of the conspiracy, and how Abu Ghayth provided material support in the form of personnel by recruiting new members to jihad and by his own service as a spokesman to generate propaganda for the organization's cause. The level of detail in the indictment is unassailable under our Rule 7 standard.

Abu Ghayth's only remaining attack on the indictment is his claim that "pure speech" cannot give rise to criminal liability. However, "crimes under the federal criminal code are, or can be, committed by speech alone." United States v. Rahman, 189 F.3d 88, 116-117 (2d Cir. 1999). In United

<u>States v. Stewart</u>, the defendants were prosecuted for material support of terrorism under Section 2339A. 590 F.3d 93, 115 (2d Cir. 2009). Stewart's sole acts were the conveying of messages between an imprisoned terrorist and others. The argument that these acts of speech could not satisfy the material provision of "personnel" under Section 2339A was rejected because that speech assisted with the commission of the terror conspiracy. <u>Id</u>. Similarly here, Abu Ghayth's words in his speeches served as "the very vehicle of a crime" by aiding in the commission of terrorist acts. <u>United States v. Rowlee</u>, 899 F.2d 1275, 1278 (2d Cir. 1990). He told Muslims it was their duty to fight for Al Qaeda, urged them to pledge loyalty to bin Laden, and threatened future attacks against "new American targets ... at the time that we pick, and the place that we pick, and the method that we pick." Far from "pure speech," Abu Ghayth's words provided material support to Al Qaeda by spreading its message to the world and encouraging others to join its terrorist cause.

For the foregoing reasons, and finding no merit in Abu Ghayth's other arguments, we hereby **AFFIRM** the judgment of the district court.

> FOR THE COURT:
> CATHERINE O'HAGAN WOLFE, CLERK

8