GAIDRY, J.
| .¿The owners of a professional medical office appeal a judgment against them and in favor of the contractors who constructed the office. The contractors answer the appeal, seeking damages, attorney fees, costs, and interest. For the following reasons, we affirm the judgment in part and reverse it in part, and deny the answer to the appeal.
FACTS AND PROCEDURAL HISTORY
Charon E. Gentile, M.D. is a physician practicing in Houma, Louisiana, and the sole member of a limited liability company, La Donna, L.L.C. La Donna, L.L.C. owned a municipal lot in Houma. (For convenience, we refer hereafter to Dr. Gentile and La Donna, L.L.C. jointly as “Dr. Gentile.”) Dr. Gentile obtained three bids from contractors for the construction of a medical office on the lot. She ultimately chose that submitted jointly by Bonvillain Builders, L.L.C. and Bonvillain Construction Company, Inc. (the Bonvillains).[1] The total contract price was $323,819.00. The final plans for the Bonvillains’ proposal were dated October 7, 2003. The parties executed the contract on November 25, 2003, but by its terms it was effective as of its date, November 12, 2003.
The Bonvillains retained a drafting service to prepare the office floor plans and an engineering firm to prepare the structural project plans needed for the approval of the fire marshall. The latter plans bore the notation, “For Fire Marshall Approval Only.” The Bonvillains submitted the plans to the Terrebonne Parish Planning Commission of the Terrebonne Parish Consolidated Government (the parish), and a building permit was approved. However, in January 2004, before the foundation concrete was poured, the |aparish issued a cease-and-desist order, advising the Bon-villains that the construction plans did not conform to the parish building code requirement relating to drainage systems for commercial buildings. The Bonvillains again consulted their engineering firm to prepare the drainage study, which cost $5,490.00 and was completed sometime pri- or to April 13, 2004.
The drainage system’s total completed cost, including that of the drainage study, amounted to $47,422.02. Although Dr. Gentile was informed of the need for a drainage system, its final cost was not disclosed to her until the construction project was nearly complete. A dispute arose as to who was responsible for that cost, as well as certain unfinished “punch list” and other items.
On August 30, 2004, a notice of termination of work, verifying the “substantial completion” of the office pursuant to La. R.S. 9:4822(E), was executed by Bonvillain Builders, L.L.C. and La Donna, L.L.C. On October 26, 2004, the Bonvillains filed a statement of their contractor’s privilege relating to the alleged unpaid balance due in the mortgage records of Terrebonne Parish.
On April 29, 2005, the Bonvillains instituted this litigation against Dr. Gentile, filing a “Petition to Rescind Sale and for *628 Damages.” They alleged an unpaid balance due of $32,381.90 under the contract, representing the final 10% payment of the original contract price. They further alleged that they “abided by Terrebonne Parish codes, procedures, and governmental regulations, which required a drainage system which was not [originally] contemplated,” and that the parties “agreed upon the additional drainage system project and its costs to comply with appropriate Terrebonne Parish codes and regulations,” as well as a change order to that effect. (Emphasis added.) They claimed a net balance due for that additional cost, after a |4 credit attributable to changes in other items, in the amount of $45,813.55. Additionally, the Bonvillains alleged that Dr. Gentile “acted with artifice and misrepresentation” in failing to perform her obligations, and thus was liable to them for damages, attorney fees, and costs. They also alleged entitlement to “rental value of the property” from the time Dr. Gentile took occupancy. Finally, they sought rescission of the contract.
Dr. Gentile filed a peremptory exception, raising objections that the petition failed to state a cause of action or a right of action of the Bonvillains to seek rescission, as no contract of sale was alleged. Although the disposition of the exception is not evident from the record, on September 30, 2005, the scheduled date of hearing, the Bonvillains filed a supplemental and amending petition, clarifying that the contract was a construction contract and reiterating their demand that the contract should be rescinded or dissolved.
On March 2, 2007, Dr. Gentile answered the petition, admitting the existence and nature of the contract, but denying that she agreed to any change order relating to the drainage system. She also affirmatively alleged the Bonvillains’ failure to complete their work, as well as various defects or omissions in construction that constituted breaches of the warranty of workmanlike performance.
On April 10, 2007, Dr. Gentile instituted a separate legal action for damages against the Bonvillains, alleging that there were numerous defects in her office, all attributable to defective construction and unfinished work by the Bonvillains. The Bon-villains answered the suit, denying liability. On Dr. Gentile’s motion, her action was consolidated for trial with the earlier action instituted by the Bonvillains.
15This matter was tried on the merits on May 29, 2007. Prior to trial, the Bonvil-lains stipulated to entry of judgment requiring them to pay for reconstruction of entrance and exit driveways based upon the bid amount of a subcontractor.[2] At the conclusion of the trial, the trial court issued its ruling and oral reasons for judgment, finding in favor of the Bonvillains on the issue of Dr. Gentile’s liability for the cost of the drainage system. The trial court’s judgment was signed on June 13, 2007. Both parties filed motions for new trial, which were denied by judgment signed on October 5, 2007. This appeal followed.
ASSIGNMENTS OF ERROR
Dr. Gentile contends that the trial court committed error in its interpretation of the construction contract by not enforcing the contract according to its terms, which required the Bonvillains’ work to meet the requirements of prevailing construction codes, thereby obligating the Bonvillains to bear the additional cost of the drainage system.
In their answer to the appeal, the Bon-villains contend that the trial court erred *629 in failing to award them nonpecuniary damages, attorney fees, and costs, and they also seek attorney fees and expenses associated with defending Dr. Gentile’s appeal and then- answer to that appeal.
STANDARD OF REVIEW
Whether a contract is ambiguous or not is a question of law. Borden, Inc. v. Gulf States Utilities Co., 543 So.2d 924, 928 (La.App. 1st Cir.), unit denied, 545 So.2d 1041 (La.1989). Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. Id. However, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, [ (¡based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. Id. This determination of a legal question is made de novo. See Bennett v. Ragon, 04-0706, p. 5 (La.App. 1st Cir.3/24/05), 907 So.2d 116, 120.
DISCUSSION

General Principles of Contractual Interpretation

Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. This is an objective inquiry; thus, “a party’s declaration of will becomes an integral part of his will.” La. C.C. art. 2045, Revision Comments-1984, (b).
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. The words of a contract must be given then- generally prevailing meaning. La. C.C. art. 2047. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.
Louisiana Civil Code article 2056 provides:
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
Similarly, La. C.C. art. 2057 sets forth an analogous rule:
|7In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation.
Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor.

The Construction Contract

The construction contract at issue contains the following provisions pertinent to the issues on appeal:

ARTICLE 1: CONTRACTOR RESPONSIBILITIES SITE WORK;

The contractor will supply all site work necessary for the construction of the proposed project.
[[Image here]]

ALSO INCLUDED IN THIS PROPOSAL ARE THE FOLLOWING;

*630 1. Submittal of plans for Building Permit, Fire Marshall, and any other Necessary agencies
[[Image here]]

Please note that any material and/or labor not mentioned in the above specification is to be considered not included in this contract proposal. Except as required to complete the project in a manner to meet prevailing codes.

ARTICLE 3; CHANGE AUTHORIZATION

Any changes in either the plans or specifications encompassing methods, materials, workmanship, etc. shall be authorized by implementing a change order describing the change and ratified in writing.

Any changes in the work that may add or delete from the contract total cost will be handled in the form of a written change order and signed by both the Owner and the Contractor prior to the work being performed.

Extra work ordered shall constitute a part of the work to be done under this contract, and the provisions and conditions of this contract shall apply to the said extra work. Payment for |8extra work shall be due to Contractor only when the said extra work has been authorized by Owner.

AR TICLE 4: HIDDEN CONDITIONS

Should conditions arise after construction begins that have been hidden from view and hampers or prevents the intent of this project, such as buried concrete, pipes, cables or any type item, the contractor shall notify the owner for a decision as to the disposition of such item(s). The intent of this paragraph is not to place undue expenses or delays upon the contractor because of unforeseen conditions.

ARTICLE 5; CONTRACTORS GUARANTEE

Contractor expressly agrees that all facilities shall be installed, constructed, and assembled in accordance with the final design approved by Owner. All workmanship throughout is to be performed by skilled mechanics and workmen in accordance with the best practice.

ARTICLE 6: INDEPENDENT CONTRACTOR

... The Contractor shall be responsible to the Owner for the faithful completion of the work herein contracted for and in accordance with the specification and drawings attached hereto and according to prevailing construction codes.

ARTICLE 7: GENERAL TERMS AND CONDITIONS

This contract contains all of the terms and conditions agreed by the parties hereto with the [sic ] respect to the woi'k to be performed hereunder and on all matters which in any way affect said work, and no other agreements, oral or otherwise, regarding the subject matter of this contract, shall be deemed to exist or to bind any of the parties hereto. No alteration, modifications, changes, amendments, extra work or variations of the terms and conditions of this contract shall be binding on the parties hereto in any respect.
The undersigned has read and understands the whole of the above contract ....
(Emphasis added.) There is no provision in the contract addressing the issue of recoverable attorney fees in the event of *631 any party’s default or failure to perforin. Finally, it is undisputed that the contract was prepared at the request of and on behalf of the Bonvillains by an attorney (not the Bonvillains’ present counsel).
| <)The Parish Building Code
The pertinent portion of Section 22-168 of the Terrebonne Parish Code (Parish Code 1979, § 7-4), entitled “Commercial or industrial development impeding rainfall absorption; approval and conformity required,” was originally adopted in 1979, and provides as follows:
For the approval of a building permit application, all proposed commercial or industrial developments shall have submitted adequate plats, plans, calculations and approvals necessary to demonstrate that they meet the following requirements.
(1) All commercial and industrial development:
a. Which will result in making impervious to rainfall more than twenty percent (20%) of a lot or more than five thousand (5,000) square feet of a lot; and
b. Which is not in a development that has received engineering approval for commercial or industrial development from the planning commission after the passage of Ordinance No. 5293 (8/25/04)....
[[Image here]]
shall be submitted to the TPCG [Ter-rebonne Parish Consolidated Government] Department of Public Works for approval. The development of the property shall conform to the requirements of the TPCG’s Storm Drain Design Manual, as amended.
The lot at issue measured 90.41 feet by 172 feet, thus having a total area of 15,-550.52 square feet. The total area of the office, including its carport and porch, was 3,890 feet, representing just over 25% of the area of the lot. It is undisputed that the construction woi*k at issue was subject to the above-quoted requirements.

Analysis

Legal agreements have the effect of law upon the parties, and as they bind themselves, parties shall be held to a full performance of the obligations flowing therefrom. L & A Contracting Co., Inc. v. Ram Indust. Coatings, Inc., 99-0354, p. 10 (La.App. 1st Cir.6/23/00), 762 So.2d 1223, 1230, writ denied, 00-2232 (La.11/13/00), 775 So.2d 438. A contract may be modified only by mutual consent. Id., 99-0354 at p. 15, 762 So.2d at 1232. Written contracts for construction may be modified by oral contracts and by the conduct of the parties, and this is true even when the written contract contains the provision that an owner is liable only if the change orders are in writing. Id., quoting Pelican Elec. Contractors v. Neumeyer, 419 So.2d 1, 5 (La.App. 4th Cir.), writ denied, 423 So.2d 1150 (La.1982).
The total cost of the drainage system was $47,422.02, representing a nearly 15% increase to the original contract price of $323,819.00. It is only logical and reasonable to conclude that such a substantial increase in the contract price would likely be memorialized in a change order as contemplated by the contract, if the parties mutually agreed that Dr. Gentile was to bear such cost. The Bonvillains contend that changes in materials and additional work for various items made at Dr. Gentile’s oral request somehow serve to obviate the need for a change order relating to the drainage system. The fallacy in the Bonvillains’ argument is that the parties do not dispute the fact that the other changes in materials and associated labor were mutually agreed upon, and that none of those oral changes related to work nec *632 essary to conform to mandatory building code requirements. Additionally, after those changes were implemented, Dr. Gentile was admittedly due a credit of $1,608.47, a net difference of only 0.5% of the total contract price.
The party who asserts that an obligation has been modified must prove the facts or acts giving rise to the modification. La. C.C. art. 1831. The Bonvillains produced an undated, unsigned document purporting to be a “change order” for the construction of the required drainage system. Their | x preparation of that document might reasonably be viewed as tacit recognition of the necessity for a written change order. At any rate, the supposed change order was never signed by Dr. Gentile, and there was no evidence showing or suggesting that she ever agreed to pay the stated amount of the claimed additional cost.
Nothing in the trial court’s oral reasons for judgment suggests that the trial court found that an oral modification of the contract relating to the drainage system cost was mutually agreed upon the parties, and our review of the record demonstrates that the overwhelming preponderance of the evidence militated in favor of the opposite conclusion. Such being the case, the determination of the contested issue must rest upon the language of the written contract itself, read in light of the applicable law.
The drainage study ultimately prepared by the engineer, Shaw Coastal, Inc., at the Bonvillains’ request stated that the study’s objective was “to provide a drainage plan for the Dr. Charon Gentile Medical Office to comply with the Terrebonne ravish codes and to the Parish Storm Drainage Design Manual.” (Emphasis added.) Under any reasonable interpretation of the contract language, compliance of the building plans and construction work with the parish building code requirement cannot be considered “extra work” or “hidden conditions” warranting additional payment by Dr. Gentile. Rather, the contract unambiguously and expressly contemplated that the Bonvillains would be responsible for the completion of the described work “according to prevailing construction codes,” and that “any material and/or labor not mentioned” in the contract was included if “required to complete the contract in a manner to meet prevailing codes.” Thus, the drainage study and the drainage system clearly fell within the scope and price of the work contemplated by the original written building contract.
|12It is an established principle that laws that exist at the time of execution of a contract form a part of that contract and are incorporated in it. These laws form part of the contract as though expressly written therein. Morton Bldgs., Inc. v. Redeeming Word of Life Church, Inc., 97-2251, p. 7 (La.App. 1st Cir.11/6/98), 744 So.2d 5, 9, writ denied, 99-0687 (La.4/30/99), 741 So.2d 16. Thus, where a parish or city has in effect a building code, the provisions of that building code form a part of every construction contract executed in that parish or city. Such a contract contemplates a building constructed in compliance with local building code requirements, as though expressly written into the contract. Id.; see also Mut v. Newark Ins. Co., 289 So.2d 237, 240 (La.App. 1st Cir.1973), units denied, 290 So.2d 910, 912 (La.1974).
Despite the Bonvillains’ admitted ignorance of the existence of the building code’s drainage requirement, there is nothing to suggest that the parish ordinance was not properly adopted and promulgated. The building code’s drainage requirement formed an implied part of the construction contract, with the same force and effect as if it had been expressly stated *633 thei’ein. In their brief, the Bonvillains emphasize that they personally informed Dr. Gentile after the cease-and-desist order from the parish was received, and explained the mandatory nature of the drainage system. They claim that their “only other course of action was to abandon the project if Dr. Gentile did not agree to the drainage system.” The Bonvillains might arguably have relied, to their detriment, on the parish’s initial issuance of the building permit based upon their original plans. But such reliance cannot serve to relieve the Bonvillains of their contractual duties to Dr. Gentile, nor does it justify the transfer of the financial consequences of them professional neglect to her.
11 Jn its oral reasons for judgment following trial, the trial court explained the basis for its ruling relating to the drainage system:
The Court is convinced, through the testimony of both sides, that this was an unforeseen item ....
[[Image here]]
I am of the opinion, after hearing the facts, that this major problem with the drainage issue that has to be addressed teas not foreseen, that has to be done to meet code, to meet the neiv code regulations, or whatever, and that’s going to have to be borne by the doctor.
(Emphasis added.) Thus, the trial court may have concluded that the mandatory building code requirement relating to the drainage system was a “hidden condition” as contemplated by Article 4 of the contract.
We do not agree with the trial court’s reasoning, in light of both the plain, unambiguous wording of the contract and the applicable law on this issue. The trial court’s interpretation is plainly wrong, and constitutes legal error. Even if the relevant contract language could somehow be considered ambiguous, our law would require that it be interpreted against the Bonvillains, who supplied it. Accordingly, the trial court’s judgment must be reversed insofar as it holds Dr. Gentile liable for the costs related to the drainage system.
When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the tune it is due. La. C.C. art. 2000. The trial court awarded the Bonvillains legal interest from the date of judicial demand on the judgment amount related to the drainage system, but no interest related to the final 10% interim payment, which was paid by Dr. Gentile prior to trial. Because we reverse the judgment awarding the amount claimed for the drainage system, the Bonvillains are of course not entitled to any interest thereon.
114Pamages for nonpecuniary loss arising from contract may be recovered only in limited circumstances: (1) when the contract by its nature was intended to gratify a nonpecuniary interest and the nonpecu-niary damages were foreseeable to the ob-ligor; or (2) when the obligor’s failure to perform was intended to aggrieve the obli-gee’s feelings. See La. C.C. art. 1998. The contract at issue was obviously not intended to gratify any nonpecuniary interest of the Bonvillains. While we give the Bonvillains the benefit of the doubt that their feelings might possibly have aggrieved by the delay in receiving the final interim payment of 10% due, the evidence does not support any claim that any delay was intended by Dr. Gentile to do so. And as we have already determined that Dr. Gentile had no contractual or legal duty to pay any additional costs attributable to the drainage system, we deny the Bonvillains’ claim for nonpecuniary damages in their answer to the appeal.
*634 Because we reverse the judgment in favor of the Bonvillains on the merits, we also reverse the trial court’s award of $8,000.00 in attorney fees. In doing so, we also emphasize that such an award would not be justified even had our decision on the merits been different. The trial court’s judgment stated that its award was made pursuant to the Louisiana Private Works Act, La. R.S. 9:4801, ei seq., but we have found no statutory authority authorizing recovery of attorney fees by a general contractor under the facts alleged by the Bonvillains.[3] The trial court rejected the Bonvillains’ claim that Dr. Gentile acted in bad faith or committed fraud, and its judgment did not grant rescission to the Bonvillains. Thus, they |cannot properly invoke La. C.C. art. 1958 as a basis for an award of damages or attorney fees. Because there was no legal basis shown to justify the award of attorney fees, the trial court’s award of attorney fees was also legal error.
The judgment of the trial court is affirmed in part, insofar as it orders the plaintiffs-appellees, Bonvillain Builders, L.L.C. and Bonvillain Construction Company, Inc., to comply with the consent portion of the judgment. The judgment is reversed in all other respects, and the clerk of the 32nd Judicial District Court is hereby ordered to cancel and remove the contractor’s lien filed by the plaintiffs-ap-pellees in the mortgage records of the Parish of Terrebonne. The answer of the plaintiffs-appellees, Bonvillain Builders, L.L.C. and Bonvillain Construction Company, Inc., to the appeal is denied. All costs of this appeal are assessed to the plaintiffs-appellees, Bonvillain Builders, L.L.C. and Bonvillain Construction Company, Inc.
AFFIRMED IN PART AND REVERSED IN PART; ANSWER TO APPEAL DENIED.
KUHN, J., dissents and assigns reasons.
GUIDRY, J., concurs in the result.

. As of the time of trial, Michael Bonvillain, the principal of Bonvillain Construction Company, Inc., had been a licensed commercial and residential contractor in Louisiana for eight or nine years. His brother, Kirby Bon-villain, was the owner of Bonvillain Builders, L.L.C., and was a licensed pharmacist. He was not a licensed contractor.

. That portion of the trial court's judgment is not contested by any party.

. Allhough La. R.S. 9:4822(L)(2) provides for recovery of attorney fees by subcontractors, material sellers, and others asserting claims under La. R.S. 9:4802, it does not authorize the recovery of attorney fees by a general contractor against the owner. See Burdette v. Drushell, 01-2494, p. 22 (La.App. 1st Cir. 12/20/02), 837 So.2d 54, writ denied, 03-0682 (La.5/16/03), 843 So.2d 1132.