STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0812

DORIS M. WELLAN, PH.D.

VERSUS

COMFORT INNOVATIONS, LLC

*DATE OF JUDGMENT:*     JUN 1 2 2020

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
NUMBER 615242, SECTION 25, PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

HONORABLE WILSON E. FIELDS, JUDGE

* * * * * *

Gregory Thomas Akers
Joshua P. Melder
Baton Rouge, Louisiana

Counsel for Plaintiff-Appellee
Doris M. Wellan, PhD


David Allen Lowe
Baton Rouge, Louisiana

Counsel for Defendant-Appellant
Comfort Innovations, LLC

* * * * * *

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

**Disposition: AMENDED AND, AS AMENDED, AFFIRMED.**

**CHUTZ, J.**

Defendant-appellant, Comfort Innovations, LLC (CI), appeals the trial court's judgment awarding unpaid rent and conversion/unjust enrichment relief to plaintiff-appellee, Doris Wellan, as the dispossessed owner of a corporeal movable. We amend and, as amended, affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Wellan filed this lawsuit on September 10, 2012, averring a breach of a 66-month written lease of movable property that she entered into with CI in July 2007. The movable property consisted of "The Mold," which was described in the lease as "[a] series of molds ... used to produce all of the plastic parts for the assembly of a portable air conditioner, under patent # US 7,188,489 B2" held by CI. According to the petition, CI had defaulted on the required monthly payments and, despite demand by Wellan, refused to make payments in accordance with the terms of the lease. Wellan claimed "an amount sufficient to compensate her for past-due monthly payments" from CI.

CI answered the lawsuit on April 4, 2013, generally denied Wellan's allegations, and asserted a reconventional demand. In its claim against Wellan, CI averred that to raise capital and expand its business relative to its portable air conditioner invention, it had entered into an investment contract with Wellan whereby, for a $300,000.00 investment by Wellan, CI agreed to repay her original investment plus a return over a period of a little more than five years. According to CI, the "investment contract" was memorialized in part by the lease agreement executed on July 20, 2007, and CI "was to be and would always be the majority owner" of The Mold while Wellan would simply receive a return on her investment. Thus, the lease agreement "was a simulation of part of the terms,

2

conditions, and understandings of the investment contract" into which the parties had entered.

In its reconventional demand, CI acknowledged that Wellan had paid $266,685.32 of the $300,000.00 that she had agreed to pay but refused to pay the balance. Claiming that Wellan's failure to pay the remaining $33,314.68 constituted a breach of the investment contract, CI sought damages, including the remaining sums on the original investment amount. Wellan answered, generally denying CI's allegations.[1] The parties engaged in discovery and Wellan filed a motion for partial summary judgment, which was denied.

A pretrial order was signed by the trial court on November 6, 2017, and the matter was tried on November 15, 2017. On February 5, 2019, the trial court issued a final judgment against CI, awarding Wellan the amounts of $298,364.66 for unpaid rent and $826,125.00 for conversion and unjust enrichment relief. Additionally, the judgment dismissed all of CI's claims.[2] This appeal followed.

### UNPAID RENT

Challenging the award of unpaid rent to Wellan in accordance with the terms of the written lease agreement, CI maintains the trial court erred in failing to conclude that Wellan breached the lease agreement by failing to deliver The Mold

---

[1] Wellan also alleged that she and CI had entered into an independent contractor agreement on May 1, 2007, but that CI never requested the consulting services contemplated by the agreement. The trial court granted an involuntary dismissal of Wellan's claim for relief under the agreement, and Wellan has not appealed that disposition.

[2] Although the judgment states it was signed on February 5, 2018, the notice of judgment establishes that it was rendered in 2019. Additionally, we note that the trial court initially issued a judgment on March 12, 2018, which this court concluded was not a valid final judgment because it failed to specifically identify the party against whom judgment was rendered and dismissed the appeal. See *Wellan v. Comfort Innovations, LLC*, 2018-1260 (La. App. 1st Cir. 12/27/18) (unpublished action). Thereafter, the trial court issued the judgment presently under review, which CI timely appealed.

and to pay the full sum of $300,000.00.[3]

Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. But when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. This determination of a legal question is made de novo. Whether a contract is ambiguous or not is a question of law. *Bonvillain Builders, LLC v. Gentile*, 2008-1994 (La. App. 1st Cir. 10/30/09), 29 So.3d 625, 629, writ denied, 2010-0059 (La. 3/26/10), 29 So.3d 1264.

At trial, Wellan testified that she and CI verbally agreed for her to purchase The Mold. She pledged some of her assets and the Bank of Montgomery (bank) was willing to give her "a certain amount" of money, which she believed would amount to between $200,000.00 and $250,000.00. According to Wellan, "[w]hatever I was able to get from the bank" was the amount she agreed to pay for The Mold. Wellan recalled having discussed the purchase of The Mold with Cecil Cavanaugh, who was her CPA and whom she understood would serve as Chief Financial Officer (CFO) for CI.

Wellan made two payments to CI for the purchase of The Mold. The first was $150,000.00 given to CI on August 16, 2007. The second payment was

---

[3] Asserting that Wellan breached the lease agreement, CI also maintains that the trial court erred in denying its motion for an involuntary dismissal. See La. C.C.P. art. 1672B ("In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief."). Although CI moved for a directed verdict, the error is one of form rather than substance, as the ultimate object of both motions is the same. The trial court, in its discretion, denied CI's motion, heard all of the evidence presented, and rendered its decision on the merits – a decision that included a damage award to Wellan for conversion. Because we affirm that award on appeal, it is clear that Wellan has shown a right to relief, and we find no error in the trial court's denial of CI's motion. See *Badeaux v. State Through Louisiana Dep't of Econ. Dev.*, 2017-0599 (La. App. 1st Cir. 11/1/17), 234 So.3d 935, 937.

4

provided to CI by a money order dated December 5, 2007, issued from the bank in the amount of $116,685.32. Wellan testified that after the second payment, she was never asked for any more money by anyone at CI to complete the purchase of The Mold.

In addition to the purchase of The Mold, Wellan explained that she entered into a written lease agreement, entitled "Manufacturing Mold Lease" dated July 19, 2007, that she signed along with Bonnie Floyd, the President and CEO of CI, on July 20, 2007. The lease agreement stated in pertinent part:

> The Mold, manufactured at an overseas plant and housed in the plant of production chosen by [CI] shall be leased to [CI] under the following terms:
>
> 1. The lease term shall be for a period of 66 months.
> 2. Lease payments for the first 6 months shall be $2500.00 per month, payable quarterly.
> 3. Lease payments of $6,375.00 per month shall be paid at the beginning of month 7 and continue until the end of the lease period.
> 4. Unless otherwise directed, all lease payments are to be made to [Wellan]....
> 5. [CI] reserves the right to purchase The Mold from [Wellen] at fair market value within 90 days of the end of the lease.

Wellan recalled no other terms beside those reflected in the written agreement.

Around September 2007, Wellan remembered that CI began to make payments as agreed to in the lease and that the payments continued for some time. She described that at times, the payments were either not in the specified amount or at the required time, but in an effort to assist CI, she accepted less than the lease required. She believed that when sales were at the anticipated levels, she would be compensated by CI for the differences. Wellan identified an IRS 1099 form that she received from CI showing her receipt of $33,231.34 as miscellaneous income from "Rents" in 2008. According to Wellan, she received a total of approximately $99,134.00 in rent under the terms of the lease agreement.

5

Floyd also testified at trial. She remembered that her interactions with Wellan were through Cavanaugh. Floyd identified an invoice she sent to Wellan, dated August 11, 2007, which stated "One (1) mold for manufacturing … portable air conditioners. To include both the top and bottom sections and the instrument panel" and noted under "**TERMS**" a "Down Payment – Due Now" in the amount of $150,000.00; "Due Upon Completion" was $120,000.00; and "Due Upon Delivery" was $30,000.00, for a "Total Amount Due" of $300,000.00. Wellan subsequently made payments totaling $266,685.32. And while Wellan failed to pay the full amount, Floyd conceded that CI never made a formal demand in writing but she said that CI "referenced it several times."

Although Floyd admitted that she wrote a March 20, 2009 letter to Wellan stating that Wellan purchased an interest in The Mold, not an interest in CI, Floyd testified at trial that, in her opinion, Wellan did not purchase The Mold. The arrangement between the parties was done as an investment interest for tax reasons so Wellan could get a return on her money in a short period of time. According to Floyd, "on paper" CI leased The Mold from Wellan and made payments to her but there was no document in which CI sold The Mold to Wellan because the arrangement was an investment, not a sale. CI began making payments to Wellan immediately.

Floyd explained that on July 20, 2007, CI knew The Mold was not ready for use and thought it would be ready in about eight months. Floyd acknowledged that CI selected the third-party manufacturer of The Mold who had not yet been determined when the parties entered the lease agreement, but noted that CI had no control over delivery. The Mold was not delivered to CI in 2007 or 2008. CI sent a letter to Wellan pointing out that in March 2009, costs associated with The Mold were $410,251.11. Floyd indicated that when The Mold was completed in

September 2009, the actual cost was $488,466.72. She elaborated that the additional expenditures beyond the original investment amount were incurred in fixing problems with The Mold which increased costs of production from the original projection. Floyd acknowledged that under the terms of their arrangement, CI never intended to receive The Mold from Wellan.

Cavanaugh also testified at trial. He stated that he was a CPA and that he had briefly participated "in name only" as the CFO of CI but had no authority to sign checks and was never a signatory on CI's bank accounts. He also worked as an outside salesperson but was never paid a salary and did not get paid much in the position.

In his capacity as a CPA, Cavanaugh was aware of the lease agreement, referring to it as a "sale lease back." Cavanaugh agreed that a sale lease back consisted of two parts: first somebody buys something from someone; and secondly, the buyer leases the thing back to the seller. The sale of The Mold was originally for $300,000.00, and Cavanaugh calculated lease payment projections so that Wellan would receive a 15% return on her investment. Because Wellan was unable to obtain a loan in the full amount of $300,000.00, Cavanaugh thought the lease agreement payments were set at less than the original projections based on a pro rata amount. But Cavanaugh explained that he was unaware of the particulars that the parties actually agreed upon when they entered the lease.

CI maintains that because the undisputed evidence establishes that Wellan never had possession of The Mold, she never delivered it to CI, thereby breaching the lease agreement. Therefore, CI asserts the trial court erred in awarding unpaid rent to Wellan.

Lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a

7

term in exchange for a rent that the lessee binds himself to pay. The consent of the parties as to the thing and the rent is essential but not necessarily sufficient for a contract of lease. La. C.C. art. 2668. A lessor is, among other things, bound to deliver the thing to the lessee. La. C.C. art. 2682. In making delivery, the lessor is bound to deliver the thing at the agreed time and in good condition suitable for the purpose for which it was leased. See La. C.C. art. 2684.

The undisputed evidence established that the parties contemplated that CI would maintain control over the manufacturing of The Mold. Any delays in delivery from Floyd's expected time table of "eight months or so" were created by CI and the demands it made in production to conform The Mold to the specifications it had. A reasonable factual basis exists for the trial court's finding that The Mold was delivered to CI in accordance with the parties' intent, i.e., at the agreed time as required under Article 2684. Thus, there was no error by the trial court in concluding that Wellan did not breach the lease agreement on the basis of having failed to deliver The Mold to CI.

CI also urges that the trial court erred by not concluding that Wellan breached the lease when she failed to pay CI the full sum of $300,000.00 as evinced in the invoice sent to Wellan in August 2007. Having failed to pay the full amount, CI reasons, Wellan breached the lease agreement and the trial court erred in finding to the contrary. There is no merit in this contention. There is nothing in the four corners of the Mold Manufacturing Lease that required Wellan to pay anything to CI. Given the clear and unambiguous language of the lease agreement, there was no breach on this basis.

CI also suggests the trial court erred in failing to find that Wellan breached the terms of the Investment Agreement when she failed to pay the additional amount of $33,314.68 so as to conform to $300,000.00 as contemplated by the

parties. But the record supports a conclusion by the trial court that the verbal agreement between the parties was a sale of a movable rather than the innominate contract of an investment agreement that CI claims.

Sale is a contract whereby a person transfers ownership of a thing to another for a price in money. The thing, the price, and the consent of the parties are requirements for the perfection of a sale. La. C.C. art. 2439. The price must be fixed by the parties in a sum either certain or determinable through a method agreed by them. La. C.C. art. 2464. Delivery of a movable takes place by handing it over to the buyer. If the parties so intend, delivery may take place in another manner. La. C.C. art. 2477.

Factual findings that all these elements were met in the verbal contract between the parties whereby ownership of The Mold was transferred to Wellan from CI in exchange for a sum of money are supported by the evidence. The trial court did not err to the extent that it found Wellan's testimony more credible than Floyd's and concluded that CI consented to sell The Mold to Wellan for "[w]hatever [she] was able to get from the bank." Cavanaugh's testimony supports Wellan's on this version of the facts. And among the provisions of the lease agreement was the term that "[CI] reserves the right to purchase The Mold from [Wellan] at fair market value within 90 days of the end of the lease." Therefore, a finding by the trial court that the parties agreed in a verbal contract to sell The Mold from CI to Wellan for the amount of money she was able to obtain from the bank, i.e., a sum determinable through a method agreed to by the parties, is not

manifestly erroneous.[4] Accordingly, the record supports the trial court's determinations that: CI sold The Mold to Wellan for $266,685.32; Wellan leased The Mold back to CI; CI failed to pay the rent due; and CI owed Wellan damages of $298,364.66.[5]

## AWARD FOR CONVERSION/UNJUST ENRICHMENT

In addition to the unpaid rent, the trial court awarded Wellan relief for "her conversion/unjust enrichment claim." On appeal, CI urges that such relief is procedurally and substantively barred.

The record shows that on February 9, 2015, Wellan filed a supplemental and amended petition, asserting claims for relief for unjust enrichment or, alternatively, conversion, which she signed in her own name. On February 13, 2015, Wellan's attorney filed a motion to withdraw as counsel of record that the trial court granted on February 26, 2015. CI asserts that because Wellan technically had an attorney

---

[4] CI introduced into evidence a letter dated January 1, 2010 from Wellan to CI in which Wellan stated the payments that she made to CI constituted "89% of the total" and suggested that gave her "89% ownership of 'The Mold.'" At trial and on appeal, CI reiterates that the letter impeached Wellan's testimony regarding the parties' mutual intent to transfer ownership of The Mold from CI to Wellan. Mindful that Wellan was not an attorney cognizant of pronouncements of legal conclusions, we simply cannot say the letter so contradicts her testimony, or that her testimony is so internally inconsistent or implausible on its face in light of the letter, that a reasonable factfinder could not credit her version of the facts. See *Stobart v. State*, 617 So.2d 880, 882 (La. 1993). Thus, the trial court reasonably disregarded any ostensible legal conclusions offered by Wellan in the letter. Moreover, to the extent that Wellan failed to pay to CI the full amount of $300,000.00 for the sale of The Mold, Floyd admitted CI neither formally demanded that Wellan pay $33,314.68 nor sued for dissolution of the sale. See La. C.C. art. 2561 ("If the buyer fails to pay the price, the seller may sue for dissolution of the sale."). On appeal, CI does not challenge the trial court's dismissal of its claim against Wellan for the difference between what Wellan paid and $300,000.00 that CI alleged it was entitled to receive from her in its reconventional demand. Lastly, we note that CI does not contend on appeal that the parties co-owned The Mold, and we cannot say the trial court was constrained by the January 1, 2010 letter or any other evidence admitted at trial to reach such a conclusion, particularly since the lease agreement indicated that CI reserved the right at the end of the lease to purchase "The Mold," not merely Wellan's interest in The Mold.

[5] On appeal, CI does not challenge the quantum of the trial court's award of unpaid rent. According to the terms of the lease, CI was obligated to pay Wellan $15,000.00 for the first six months ($2,500.00 x 6) plus $382,500.00 for the remaining sixty months ($6,375.00 x 60) for a total of $397,500.00. Wellan testified that CI paid her approximately $99,134.00. Subtracting $99,134.00 from $397,500.00 yields $298,866.00. Thus, the trial court's award of $298,864.66 to Wellan for unpaid rent is supported by the evidence.

10

of record on February 9, 2015, the attorney was required to sign the supplemental and amended petition prior to its filing.

At the commencement of trial, CI verbally moved to strike Wellan's supplemental and amended petition or "[a]lternatively, in the amended petition [Wellan] added [Floyd] individually and personally as a defendant. However ... service was never perfected on her. So at a minimum [CI] would request that [Floyd] be dismissed from the matter with prejudice." After ascertaining that the supplemental and amended petition had been filed over two-and-a-half years before trial and that CI had never filed a written motion to strike the supplemental and amended petition, the trial court granted CI the alternatively requested relief and struck Wellan's claims against Floyd in her individual capacity. An attorney's failure to sign a pleading is a technical defect, which is curable. *S. Pipe & Supply Co., Inc. v. Lopez*, 2017-1547 (La. App. 1st Cir. 6/21/18), 253 So.3d 185, 190. Once her attorney officially withdrew from representation of Wellan, any defect was cured since Wellan signed the pleading pro se. And insofar as the verbal motion to strike, there was no abuse of discretion by the trial court in granting the alternative relief and conversion and/or unjust enrichment relief. See *Cole v. Cole*, 2018-0523 (La. App. 1st Cir. 9/21/18), 264 So.3d 537, 544.

As an additional procedural impediment, CI contends it neither acquiesced in the filing nor filed a responsive pleading, noting that Wellan did not obtain leave of court before filing the supplemental and amended petition in a pro se capacity. As such, CI suggests that this court is compelled to dismiss these claims for relief. But Wellan's new claims were included in the pretrial order filed on October 25, 2017, and CI acquiesced to the trial of these new claims by signing the pretrial order without raising any objections. Therefore, this contention is without merit.

11

Turning now to CI's substantive complaints, we note that in rendering its award of $826,125.00 on her claim for damages as a dispossessed owner of The Mold, the trial court determined that Wellan was entitled to $450,000.00 for conversion relief. The additional amount of $376,125.00 for unjust enrichment was based on a finding that CI reconducted the lease of The Mold for 59 months at the rate of $6,375.00 per month from September 2012, when Wellan demanded return of The Mold, through November 2017, the date of the trial on the merits.

The dispossessed owner of a corporeal movable has one of three actions to enforce his rights of ownership. Among these is the delictual action of conversion. The Civil Code itself does not identify causes of action for "conversion." However, causes of action for conversion have been inferred from the Codal articles providing that the right of ownership, possession, and enjoyment of movables are protected by actions for the recovery of the movables themselves, actions for restitution of their value, and actions for damages.[6] *Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 98-0343 (La. 12/1/98), 721 So.2d 853, 856. Conversion is committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the movable is removed from one place to another with the intent to exercise control over it; (3) possession of the movable is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the movable is altered or destroyed; (6) the movable is used improperly; or (7) ownership is asserted over the movable. The conversion action is predicated on the fault of the defendant and directed to the recovery of the movable or, in the alternative, the plaintiff may demand compensation. *Id.*, 721 So.2d at 857. When the movable property is no longer in the possessor's hands, the plaintiff is entitled to recover the value of the property at the time of the conversion. *Id.*, 721 So.2d at 858. Whether or not a party has committed the intentional tort of conversion is a

_____

[6] See La. C.C. arts. 511, 515, 521, 524, 526, and 2315.

12

question of fact. ***Quality Envtl. Processes, Inc. v. IP Petroleum Co., Inc.***, 2016-0230 (La. App. 1st Cir. 4/12/17), 219 So.3d 349, 370, writ denied, 2017-00915 (La. 10/9/17), 227 So.3d 833. The measure of damages for tortious conversion, when the property cannot be returned to the plaintiff, is the value of the property at the time of conversion. ***Commercial Flooring and Mini Blinds, Inc. v. Edenfield***, 2013-0523 (La. App. 1st Cir. 2/14/14), 138 So.3d 30, 39.

On appeal, CI contends that Wellan failed to prove entitlement to damages for conversion. Based on the evidence, the trial court was not manifestly erroneous in finding that CI acquired possession of The Mold without authority and withheld possession from Wellan, the owner. In addition to Wellan's claim of ownership in this lawsuit that she filed on September 10, 2012, and a written demand for return of The Mold in a letter to CI dated September 11, 2012, the record establishes that on March 27, 2014, CI responded to an interrogatory conceding that The Mold had been removed from the jurisdiction and was scheduled to arrive in China on April 14, 2014. Accordingly, a reasonable factual basis exists for an award of the value of The Mold for CI's conversion.

The parties do not dispute that The Mold was used in the manufacturing of air condition units for which CI held the exclusive right to use the patent. CI focuses on this limited use to suggest that The Mold was without any value such that an award of damages for conversion was improper. But it is undisputed that CI used The Mold in its production and, therefore, that it had value if to no other entity but CI. It was within the trial court's purview to weigh the evidence and ascribe valuation to The Mold. The evidence established that the final cost of fabrication of The Mold was $488,466.72. Therefore, we cannot say the trial court erred in awarding $450,000.00 as the value of The Mold.

A person unjustly enriched at the expense of another is under a quasi-contractual obligation to restore the corporeal movable to the rightful owner or account for the enrichment. See La. C.C. art. 2298. The remedy is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule. *Berthelot v. Berthelot*, 2017-1332 (La. App. 1st Cir. 7/18/18), 254 So.3d 735, 738. Here, Wellan has a remedy in conversion. Thus, she is not entitled to damages for unjust enrichment. See *Gallant Investments, Ltd. v. Illinois Cent. R. Co.*, 2008-1404 (La. App. 1st Cir. 2/13/09), 7 So.3d 12, 18-19 (delictual claims of trespass and conversion preclude equitable action for unjust enrichment). See also *Marseilles Homeowners Condo. Ass'n, Inc. v. Broadmoor, L.L.C.*, 2012-1233 (La. App. 4th Cir. 2/27/13), 111 So.3d 1099, 1106 (pleading an action in redhibition precludes a claim under unjust enrichment); *Dugas v. Thompson*, 2011-0178 (La. App. 4th Cir. 6/29/11), 71 So.3d 1059, 1068 (pleading a conversion claim precludes an unjust enrichment claim).

The total amount Wellen as the dispossessed owner of a corporeal movable should have been awarded was $450,000.00 for CI's conversion of The Mold. Accordingly, we amend the judgment to reduce the trial court's award from "$826,125.00 for her conversion/unjust enrichment claim" to $450,000.00 for conversion.[7]

---

[7] Wellan requested mandatory injunctive relief, ordering CI to take ownership of the Mold. Because we have concluded that Wellan is entitled to a money judgment for the value of The Mold, an order directing CI to take ownership is moot. See *Cat's Meow, Inc. v. City of New Orleans*, 98-0601 (La. 10/20/98), 720 So.2d 1186, 1193 (Courts will not decide abstract, hypothetical or moot controversies, or render advisory opinions. To avoid such questions, courts require cases submitted for adjudication to be justiciable and ripe for decision. A justiciable controversy connotes an existing actual and substantial dispute.). See also *Cent. Oil & Supply Corp. v. Wilson Oil Co., Inc.*, 511 So.2d 19, 21 (La. App. 3d Cir. 1987), writ denied, 535 So.2d 747 (La. 1989) (All former rights of the owner of movable property awarded the value of the property at the time of conversion are supplanted by the judgment awarding relief.).

## DECREE

For these reasons, that portion of the judgment ordering CI to pay Wellan $298,364.66 for unpaid rent is affirmed. That portion of the judgment ordering CI to pay Wellan $826,155.00 for conversion/unjust enrichment is amended to order CI to pay Wellan $450,000.00 for conversion. In all other respects, the judgment is affirmed. Appeal costs are assessed one-half against Doris Wellan and one-half against defendant-appellant, Comfort Innovations, LLC.

**AMENDED AND, AS AMENDED, AFFIRMED.**